786 F.2d 554
 122 L.R.R.M. (BNA) 2137, 104 A.L.R.Fed.
749, 54 USLW 2599
 AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 1760,
AFL-CIO, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
Social Security Administration and Department of Health and
Human Services, Intervenors.
 No. 654, Docket 85-4144.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 27, 1986.
Decided March 24, 1986.
 
 William J. Stone, Washington, D.C. (Mark D. Roth, Gen. Counsel, American Federation of Government Employees, AFL-CIO, of counsel), for petitioner.
 William R. Tobey, Atty., Federal Labor Relations Authority, Washington, D.C. (Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol., William E. Persina, Associate Sol., on the brief), for respondent.
 Al J. Daniel, Jr., Atty., U.S. Dept. of Justice, Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., Anthony J. Steinmeyer, on brief), for intervenors.
 Before KAUFMAN, TIMBERS and MESKILL, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 The American Federation of Government Employees, AFL-CIO, Local 1760 (the "Union" or "AFGE") petitions for review of an order of the Federal Labor Relations Authority ("FLRA" or the "Authority"). The FLRA ruled that release by an agency employer of employee addresses would violate the Privacy Act of 1974, 5 U.S.C. Sec. 552a. In reaching its decision, the Authority balanced the necessity of the Union to communicate against the privacy interest of the employees. In weighing these respective interests, however, the Authority believed the purported privacy interest overwhelmed and prevailed over the needs of the Union. After carefully scrutinizing these competing concerns in the context of this case, we grant the petition for review.
 
 BACKGROUND
 
 2
 AFGE Local 1760 is the exclusive bargaining agent at the Social Security Administration's Northeastern Program Service Center in Rego Park, New York. The local represents approximately 2,000 employees, of which about 900 belong to the Union. On August 15, 1983, the Union requested the agency to provide the names and addresses of all the employees in the bargaining unit. Approximately two weeks later, the federal employer released the employee names but denied the request for addresses, relying, inter alia, on the Privacy Act.
 
 
 3
 The Union thereupon filed an unfair labor practice charge with the FLRA. After a hearing, Administrative Law Judge Naimark ruled in favor of the Union. Relying on our decision in Prudential Insurance Co. v. NLRB, 412 F.2d 77 (2d Cir.), cert. denied, 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969), the administrative law judge found that the addresses were crucial to the Union's ability to frame proposals for collective bargaining. Judge Naimark also stated that other means of communication open to the Union, such as bulletin boards, off-duty solicitation, and quarterly newsletters, were inadequate. The judge further noted that only forty hours of agency time were needed to provide the requested information.
 
 
 4
 The Authority, however, overruled the administrative law judge and ordered the dismissal of the Union's complaint. 19 FLRA No. 108 (Aug. 22, 1985). The FLRA ruled that the Privacy Act forbid the release of the requested information. Envisioning that release would bring only a trifling benefit to the public interest, the Authority reasoned that the "strong privacy interest" of the employees in their home addresses outweighed the Union's need for disclosure. The FLRA drew support for its conclusory discussion from the Fourth Circuit decision in AFGE, Local 1923 v. U.S. Department of Health and Human Services, 712 F.2d 931 (4th Cir.1983). The Union filed a timely petition for review pursuant to 5 U.S.C. Sec. 7123. The Social Security Administration and the United States Department of Health and Human Services intervened.
 
 DISCUSSION
 
 5
 We must first delineate the statutory regime that governs this case. The Union's unfair labor practice complaint arose under the Federal Service Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. Secs. 7101-7135 (the "Statute"). The Union made its request pursuant to 5 U.S.C. Sec. 7114(b)(4), which imposes a duty on the agency to provide data to the bargaining agent "to the extent not prohibited by law."[1] The employer asserted, and the Authority agreed, that the request was indeed prohibited by a provision of the Privacy Act, 5 U.S.C. Sec. 552a. The Privacy Act generally forbids agencies to disseminate information. Certain exceptions, however, to the general stricture against release are also enumerated. 5 U.S.C. Sec. 552a(b).
 
 
 6
 The Union thus draws our attention to 5 U.S.C. Sec. 552a(b)(2).[2] This exception authorizes an agency to release information otherwise obtainable pursuant to the Freedom of Information Act, 5 U.S.C. Sec. 552 ("FOIA"). The FOIA, in turn, does not apply to data contained in personnel files if release "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. Sec. 552(b)(6). Therefore, the last link in our statutory chain is a balancing test to determine whether the Union's request is barred by exemption (b)(6). See Department of the Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). Specifically, the question is whether the Union's need for the information outweighs the privacy interest of the employees.
 
 
 7
 In reviewing the Authority's resolution of this question, we first note our standard of review. The order should be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A) (applicable through 5 U.S.C. Sec. 7123(c)). The petitioner argues we should accord no deference to the FLRA's interpretation because the Privacy Act and FOIA are statutes outside of FLRA expertise. Because the Authority based its ruling on the "complexities" of federal labor relations, however, we owe some deference to its interpretation. See Bureau of Alcohol, Tobacco, & Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983).
 
 
 8
 Nonetheless, in striking a balance between these concerns, the Authority viewed the privacy interest with unquestioning reverence and the needs of the Union as without substance. Although the FOIA privacy exemption stands on firm ground, we disagree with the Authority's view of the concerns at stake. But, in light of the factual context before us, we cannot say that the so-called "invasion" of privacy is "clearly unwarranted."
 
 
 9
 We begin by noting that the privacy interest of the average employee in his address is not particularly compelling. Generally, addresses are often available through other public records. Moreover, the Union already has access to information that is more likely to implicate privacy concerns, for example, salary levels. 5 C.F.R. Sec. 294.702.
 
 
 10
 In addition, we have previously ruled that exemption (b)(6) applies only to facts which, if public, "could subject the person to harassment, disgrace, loss of employment, or friends." Brown v. Federal Bureau of Investigation, 658 F.2d 71, 75 (2d Cir.1981). The District of Columbia Circuit reached a similar conclusion in Getman v. NLRB, 450 F.2d 670, 676 (D.C.Cir.1971) ("bare name and address" not embarrassing). The intervenors strongly urge that Getman and its progeny were overturned in Department of State v. Washington Post Co., 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). But in the Washington Post case, however, the Supreme Court ruled solely on whether certain files fell within the ambit of exemption (b)(6) and expressly declined to apply the balancing test. 456 U.S. at 602-03, 102 S.Ct. at 1961-62. Accordingly, Washington Post is inapposite and we reaffirm our holding in Brown.
 
 
 11
 Considering the other side of the balancing test, the Authority and intervenors offer two reasons for failing to accord much weight to the Union's needs. It is argued the Union enjoys alternative means of communication, such as bulletin boards and quarterly newsletters distributed on the premises. It is true that these avenues of communication are guaranteed by the applicable collective bargaining agreement. The administrative law judge, however, found that these alternatives were inadequate. Moreover, in private sector cases, we have regarded the mere existence of alternatives as insufficient to justify the refusal to release addresses. United Aircraft Corp. v. NLRB, 434 F.2d 1198, 1205-06 (2d Cir.1970), cert. denied, 401 U.S. 993, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971); Prudential, supra, 412 F.2d 77, 81-83. In these cases, of course, we drew our rule of decision from the National Labor Relations Act, but the privacy implications of address release are essentially the same in either the public or private sector.
 
 
 12
 In addition, the respondent and intervenors suggest that release of the addresses would not be in the public interest. By labelling the AFGE's interest "proprietary", they seek to denigrate the role of the Union. The AFGE, it is suggested, desires the disputed information merely to solicit union membership. This view, however, ignores the Congressional determination that collective bargaining in federal employment is in the public interest, and that a union, as exclusive bargaining agent, must communicate with the employees it represents. 5 U.S.C. Sec. 7114(b). In the private sector, we have decisively rejected fear of union solicitation as a ground for failure to release addresses. Prudential, supra, 412 F.2d at 84-85.
 
 
 13
 Ultimately, the Authority's position is grounded on the authority of AFGE v. HHS, supra, 712 F.2d 931. The Fourth Circuit, however, dealt with the issue of privacy interest in addresses in a cursory manner. Id. at 932. Indeed, we note that Chief Judge Winter wrote a vigorous dissent emphasizing the same grounds we have set forth. Id. at 933-34 (Winter, C.J., dissenting).
 
 
 14
 Accordingly, in light of the modest privacy interest in revealing addresses alone, the ALJ's finding that other means of communication are inadequate, and the statutory approval of the Union as collective bargaining agent, we hold that the release of the employees' addresses is not "prohibited by law" within the meaning of the Statute, 5 U.S.C. Sec. 7114(b)(4).
 
 
 15
 The administrative law judge also decided that the other requirements for release contained in the Statute had been met. See 5 U.S.C. Sec. 7114(b)(4)(A), (B), (C). Although the FLRA declined to reach these issues because of its Privacy Act ruling, it is clear from the record that Judge Naimark's determinations were correct. The Authority therefore should have ruled that the Social Security Administration committed an unfair labor practice.
 
 
 16
 Accordingly, the Union's petition for review is granted, and the cause is remanded to the FLRA for entry of an order consistent with that of the administrative law judge.
 
 
 
 [1]
 The Statute provides in pertinent part:
 (b) The duty of an agency and an exclusive representative to negotiate in good faith under subsection (a) of this section shall include the obligation--
 (4) in the case of an agency, to furnish to the exclusive representative involved, or its authorized representative, upon request, and, to the extent not prohibited by law, data--
 (A) which is normally maintained by the agency in the regular course of business;
 (B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; and
 (C) which does not constitute guidance, advice, counsel, or training provided for management officials or supervisors, relating to collective bargaining....
 5 U.S.C. Sec. 7114(b)
 
 
 [2]
 The Union also argues that disclosure would be appropriate under the "routine use" exemption to the Privacy Act, 5 U.S.C. Sec. 552a(b)(3). In light of our holding pursuant to 5 U.S.C. Sec. 552a(b)(2), we do not reach this question